IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 2, 2016

## WESLEY DAWONE COLEMAN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Obion County**
**No. CC14CR52    Jeff Parham, Judge**

_____

**No. W2015-00369-CCA-R3-PC  -  Filed March 30, 2016**

_____

The Petitioner, Wesley Dawone Coleman, appeals from the denial of post-conviction relief by the Circuit Court for Obion County.  He was convicted of aggravated burglary, theft over $500, and evading arrest, and received an effective sentence of ten years in the Tennessee Department of Correction.  On appeal, the Petitioner argues that he received ineffective assistance of counsel and that the cumulative effect of counsel's errors denied his constitutional right to a fair trial.  Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L EASTER, JJ., joined.

J. Brent Bradberry, Dresden, Tennessee; and Christie Hopper, Jackson, Tennessee, for the Petitioner, Wesley Dawone Coleman.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This case stems from a burglary that took place on May 30, 2011, in Union City. In relation to this incident, the Petitioner was indicted for aggravated burglary, theft over $500, and evading arrest.  This court summarized the underlying facts of the Petitioner's case on direct appeal as follows:

> On May 30, 2011, Todd and Amy Petty and their four-year-old daughter were asleep in their home in Union City, Tennessee.  They were

awakened at around 3:21 a.m. by their home security system alarm. Mr. and Mrs. Petty jumped out of bed, leaving their daughter asleep. As Mr. Petty approached the bedroom door he heard a loud crash. He waited until the noise subsided before exiting the bedroom. When he walked around the corner, he discovered that the laundry room doors were burst open and lying on the floor. He entered the laundry room and could see that the back door to the house was wide open and there was broken glass on the floor. Mr. Petty could tell that the perpetrator used a brick to break the glass frame of the back door before reaching inside to unlock the door.

The alarm company notified the Pettys by telephone and the police were on the scene within two minutes. Prior to the arrival of the police, Mr. and Mrs. Petty took a preliminary look around the house. They noted that Mrs. Petty's purse was missing. The purse contained a set of car keys, house keys, a cell phone, and her wallet. The wallet contained some cash and credit cards. They also discovered that their daughter's iPod and a couch cushion were missing. The total value of the stolen items was estimated to be over $500.

Officer Wright of the Union City Police Department responded to the call from dispatch. He observed the broken back door glass and the brick that was presumably used to break the door. When he arrived, Mr. Petty recalled that there was an application on his wife's phone called "Find My iPhone." Mr. Petty was able to use his computer to track the phone's location to a general vicinity of Division and Waddell Street. The police were able to dispatch officers to that location. When the police were dispatched to the scene they established a perimeter on the block.

Appellant, a possible suspect, was seen running in between nearby houses. Officer David Jones was in the area near Waddell Street establishing a perimeter when he saw Appellant running. When Appellant was ordered to stop he spun around and ran in the opposite direction. Appellant was chased by an officer in a vehicle and again ordered to stop. Eventually, Appellant was apprehended five blocks away from the Petty residence. When Appellant was apprehended, a pink iPod cover was found in the back, right pocket of his pants. Some of the items stolen from the residence were located at 411 Waddell Street in the grass beside a bird bath and some of the items were located on the steps leading to the back door of 415 Waddell Street.

When Appellant was arrested, Officer Wright observed glass particles on the toe and sole area of Appellant's boots. Appellant was apprehended twenty-eight minutes after the break-in at the Petty residence.

Appellant was indicted by the Obion County Grand Jury with aggravated burglary, theft of property valued at over $500, and evading arrest. At trial, Appellant took the stand in his own defense. Appellant claimed that he was at a club on May 29, 2011 when he got "jumped." Afterwards, he was jogging near a tire store when a police officer walked past him. A second police officer shined a flashlight at him. Appellant did not pay attention to the officers while he was jogging. A third police officer started to follow Appellant in a patrol car. This officer ordered Appellant to the ground. Appellant admitted that at this point, he started running toward his girlfriend's house because he was scared. Appellant also stated that once he realized the officers wanted to talk to him, he stopped running. Appellant denied running between two houses on Waddell Street.

Appellant explained that the pink cover that was found in his back pocket was from an iPhone he bought from a man named Tracy who worked at Wendy's. He did not know Tracy's name and claimed that Tracy had moved away from Union City. Appellant testified that he paid twenty dollars for the phone even though Tracy wanted $100.

Appellant claimed that he had the pink cover for about three weeks prior to his arrest. The cover was for a Verizon touch screen cell phone. Appellant testified that he sold this phone about a week prior to his arrest to a "guy from out of town" for $60. Appellant's girlfriend removed the cover and put it in his pocket. Appellant forgot about the cover when he folded his pants up.

During testimony, Appellant acknowledged that the iPod is shorter than an iPhone but that the cover could be used for an iPhone. He kept the cover hoping to sell it to a woman. Appellant explained that it was a coincidence that he was found in possession of a pink iPod cover in close proximity and time to the burglary of the residence of Mr. and Mrs. Petty.

State v. Wesley Dawone Coleman, No. W2012-00880-CCA-R3-CD, slip op. at 2-3 (Tenn. Crim. App. June 30, 2013), perm. app. denied (Tenn. Oct. 17, 2013).

-3-

Following deliberations, the jury convicted the Petitioner as charged, and he received an effective sentence of ten years' incarceration. Id. at 3. On direct appeal, the Petitioner argued that the evidence was insufficient to support his aggravated burglary and theft convictions and that his sentence was excessive. Id. at 1. This court affirmed the Petitioner's convictions and sentence on appeal, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal. On May 30, 2014, the Petitioner filed a pro se petition for post-conviction relief. After determining that a colorable claim existed, the post-conviction court appointed private counsel. No amended petition was filed on the Petitioner's behalf.

**Post-Conviction Hearing.** At the October 24, 2014 post-conviction hearing, trial counsel, an assistant public defender and the only witness to testify, explained that she had been practicing law for two years and had handled two criminal trials before she was appointed to represent the Petitioner at trial. Counsel had several meetings with the Petitioner in preparation for trial, at which time they discussed the events surrounding the offense, the evidence, and the people counsel might contact in developing a defense strategy. The Petitioner requested that counsel speak with his family to confirm that he owned the property in question. He also wanted counsel to locate a man named "Tracy."

Counsel testified that the Petitioner's mother knew that he had a phone but could not confirm what type or whether he had a pink cover on it. Counsel also contacted the Petitioner's aunt, who confirmed that a man named "Tracy" had stayed at her house in Union City but left without providing any contact information. His aunt did not know Tracy's last name but believed that Tracy may have been living somewhere in Illinois. Counsel testified that, based on the information she was provided, she "didn't have much information to go on" to help her locate "Tracy." She stated, "I had not talked to anybody in his family or anybody that knew any more information about Tracy. I don't even know if that was his real name." Counsel said that, based on her notes from the Petitioner's case, the only people she wrote down to talk to were the Petitioner's mother, the Petitioner's aunt, and a man named Tracy. She said that Tracy was the only witness that the Petitioner asked her to find.

Counsel further testified that the Petitioner told her that he was in an altercation on the night of the offense and that he testified about the altercation at trial. However, counsel noted that she could not confirm that an altercation occurred. She was unaware whether anyone had witnessed the altercation. Counsel agreed that there were no motions filed in the Petitioner's case. She could not recall if the Petitioner had made any statements but knew that she had not attempted to have any statements suppressed. Counsel discussed her defense strategy with the Petitioner, and they met several times before trial to go over the evidence. Counsel stated that the lack of proof against the Petitioner "was basically what our defense was," pointing out that most of the property in

-4-

question was not found on the Petitioner's person. She stated, "I felt like I did the best job that I could with the facts that I was presented."

At the close of proof, the post-conviction court took the matter under advisement and denied relief in a written order on January 7, 2015. The Petitioner filed a pro se notice of appeal on February 18, 2015.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of trial counsel and that the totality of counsel's errors denied him the right to a fair trial. In response, the State argues that the Petitioner, in failing to timely appeal the denial of his post-conviction petition, has waived consideration of the issues stated therein. We agree that the Petitioner's notice of appeal was not timely filed. The deadline for the Petitioner's notice of appeal was February 6, 2015, which was thirty days from the filing of the post-conviction court's written order denying relief. See Tenn. R. App. P. 4(a). The Petitioner's notice of appeal was not filed until February 18, 2015. Here, the order denying post-conviction relief was filed on January 7, 2015, and on January 22, 2015, the Petitioner's appointed counsel withdrew from representation. The Petitioner remained incarcerated, proceeded pro se, and was financially unable to obtain proper postage until February 11, 2015. Under these circumstances, we will review the merits of the appeal in the "interest of justice." See id.

**I. Ineffective Assistance.** The Petitioner argues that trial counsel provided ineffective assistance by failing to interview pertinent defense witnesses or call any defense witnesses at trial. He further contends that counsel failed to file a motion to suppress the boots allegedly worn by the Petitioner on the night of the offense, which were introduced as evidence at trial. The State responds that the post-conviction court properly denied relief because the Petitioner failed to establish ineffective assistance of counsel. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936. Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In regard to the Petitioner's claim that trial counsel "failed to interview pertinent witnesses [or] call those witness[es] at . . . trial," he specifically contends that counsel's failure "to follow up and investigate [an altercation at] the club or the possibility of several witnesses" amounted to deficient performance. The post-conviction court found, and we agree, that the Petitioner failed to establish that counsel's performance was deficient because the Petitioner did not testify at the post-conviction hearing and failed to identify or call any witnesses who may have changed the outcome of his trial. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner."). Moreover, trial counsel met with the Petitioner several times before trial, and the Petitioner asked her to locate a man named "Tracy," without providing his last name. Counsel spoke with the Petitioner's mother and aunt, with whom "Tracy" lived for a short time. The Petitioner's aunt did not know Tracy's last name or contact information. Finally, although the Petitioner told counsel that he had been involved in an altercation on the night of the offense, he failed to present these witnesses at the post-conviction hearing or explain how they would have impacted his case.

The Petitioner also contends that trial counsel was ineffective in failing to file a motion to suppress the boots allegedly worn by the Petitioner on the night of the offense. The trial record shows that the perpetrator of this offense gained entry to the victim's home by breaking a glass door. Upon the Petitioner's arrest within twenty-eight minutes of the offense, a law enforcement officer observed glass particles on the toe and sole area

of the Petitioner's boots. At the post-conviction hearing, aside from confirming with trial counsel that she did not file any suppression motions in this case, the Petitioner did not present any proof or argument in support of this claim. The post-conviction court did not address this issue in its order denying relief. In his brief, the Petitioner argues that counsel failed to object when the officer testified that the boots had not been sent to a lab for testing. Because the Petitioner failed to put forth any argument or evidence supporting this claim, it is waived. See Brimmer v. State, 29 S.W.3d 497, 526-28 (Tenn. Crim. App. 1998). Accordingly, the Petitioner is not entitled to relief on this issue.

**II. Cumulative Error.** Finally, the Petitioner argues that the cumulative effect of trial counsel's errors denied him a fair trial. In support of his cumulative error claim, however, the Petitioner asserts that trial counsel "fail[ed] to use readily available information to impeach the State's key witnesses, fail[ed] to lodge timely objections, and . . . [made an] unreasonable request for a mistrial[.]" Unfortunately, the issues relied upon by the Petitioner in support of this claim have been waived because they were not raised at the post-conviction hearing or addressed in the post-conviction court's order denying relief. In addition, the cumulative error doctrine applies only where there has been more than one actual error, which the Petitioner has failed to establish. State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010); Tracy F. Leonard v. State, No. M2006-00654-CCA-R3-PC, 2007 WL 1946662, at *21 (Tenn. Crim. App. Sept. 13, 2007) ("[A] Petitioner who has failed to show that he received constitutionally deficient representation on any single issue may not successfully claim that his constitutional right to counsel was violated by the cumulative effect of such counsel's errors."), perm. app. dismissed (Tenn. Sept. 13, 2007). Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE

-7-